# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| GWENDOLYN S. MULLINS, ) | CASE NO. 3:14-CV-01757 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | VECCHIARELLI |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant. | |

Plaintiff, Gwendolyn S. Mullins ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. PROCEDURAL HISTORY

On March 11, 2011, Plaintiff filed her applications for POD, DIB, and SSI, alleging a disability onset date of October 20, 2009. (Transcript ("Tr.") 15.) The claims were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.*) On February 21, 2013, an ALJ held Plaintiff's hearing. (*Id.*) Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id.*) A vocational expert ("VE") also participated and testified. (*Id.*) On March

20, 2013, the ALJ found Plaintiff not disabled. (Tr. 12.) On June 16, 2014, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On August 11, 2014, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 17, 21.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred in evaluating the opinion of Plaintiff's treating physician, Dr. Sohn; and (2) the ALJ erred in failing to evaluate the opinion of Plaintiff's treating nurse practitioner, Sally Royston.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in June 1961 and was 48-years-old on the alleged disability onset date. (Tr. 25.) She had a limited education and was able to communicate in English. (*Id.*) She had past relevant work as a pizza manager, an inspector, a cashier, a cardboard box assembler, a price marker, and a nurse aide. (Tr. 24.)

### B. Medical Evidence

#### 1. Medical Reports

In October 2009, Plaintiff underwent a left lower lung lobectomy. (Tr. 382-383.) Pathology reports showed multiple carcinoid tumors. (Tr. 381.) Shortly after her surgery, pulmonologist Ragheb Assaly, M.D., completed a form for Job and Family Services, indicating that Plaintiff was unable to lift more than 20 pounds with moderate limitations in pushing/pulling and bending. (Tr. 388.)

2

A computed tomography (CT) scan of Plaintiff's chest from June 2010 showed soft tissue density nodules in the right lung field. (Tr. 324-325.) A pulmonary function study from November 2011 showed a moderately reduced diffusing capacity, consistent in part with post-lobectomy and/or with progressive interstitial disease. (Tr. 657-662.) A CT scan from October 2012 showed growth of the right middle lobe nodule. (Tr. 767-768.) Plaintiff was diagnosed with a malignant carcinoid tumor of the lung. (Tr. 779.)

Plaintiff also complained of pain in her knees throughout the relevant period. In February 2010, she reported to Dr. Assaly that her knee pain made it difficult for her to climb more than two flights of stairs or walk more than two to three blocks without stopping. (Tr. 327.) Plaintiff's treating nurse practitioner, Sally Royston, recommended that Plaintiff attend physical therapy. (Tr. 515.) Plaintiff participated in physical therapy from September to November 2010. (Tr. 500-533.) On her Patient Intake form, Plaintiff rated the pain in her knees three out of 10 at the time of assessment and eight out of 10 at its worst. (Tr. 512-514.) When Plaintiff was discharged from physical therapy, she reported that she was having less pain going up steps and that she tolerated all of her home exercises. (Tr. 505.)

On November 23, 2010, Ms. Royston opined that Plaintiff was restricted to a limited range of sedentary work and that she could lift no more than 10 pounds; she could stand or walk for one hour at a time; she must alternate between sitting and standing every 10 minutes; she would need a 10 to 15 minute rest period after working four to six hours; and she could occasionally bend, squat, crawl, and reach and should never climb. (Tr. 491.) Ms. Royston further opined that Plaintiff had moderate limitations in her ability to tolerate exposure to environmental pollutants such as dust,

3

fumes, and smoke. (*Id.*)

Plaintiff treated with Ms. Royston in February 2011 for complaints of pain in her tail bone when sitting. (Tr. 494-496.) In May 2011, Ms. Royston noted that Plaintiff had knee pain but that she admitted that she was not continuing with her home exercises from physical therapy "like [she] should." (Tr. 547-549.) On examination, Plaintiff had no swelling or edema, no tenderness to palpation, and normal strength and tone, although she had some minimal crepitus in her left knee. (Tr. 547-549.) Ms. Royston ordered bilateral x-rays, advised Plaintiff to lose weight, and instructed her to follow-up in three months. (Tr. 547-549.)

May 2011 x-rays of Plaintiff's right knee showed that she had some tricompartmental spurring with some early medial side narrowing, and her left side x-rays showed similar findings. (Tr. 550.) Plaintiff was diagnosed with bilateral knee arthritis accompanied by small effusions. (*Id.*) In September 2011, Plaintiff had an MRI of her left knee, which treating physician Donald Baker, M.D., interpreted and thereafter diagnosed Plaintiff with osteoarthritis of the knees tricompartmentally. (Tr. 572-573.) Dr. Baker noted that Plaintiff had Kenalog and Lidocaine injections the previous week and that they reduced her pain from 8/10 to 4/10. (Tr. 572.) Dr. Baker prescribed an anti-inflammatory medication and physical therapy. (Tr. 572-573.)

On October 3, 2011, a physical therapy evaluation showed that Plaintiff had decreased strength in the hips and knees with medial and joint line tenderness. (Tr. 570.) The physical therapy assessment noted that Plaintiff would benefit from physical therapy to improve lower extremity flexibility and strength while decreasing pain to resume activities of daily living without difficulty. (*Id.*) On October 21, 2011, Plaintiff

4

reported that she still had knee pain although her left knee responded well to injections. (Tr. 692.) Examination showed osteoarthritis of the right knee. (*Id.*)

Dr. Baker referred Plaintiff to David Sohn, M.D., who treated Plaintiff in February 2012. (Tr. 698.) Plaintiff reported to Dr. Sohn that she had achy pain in her knees for years, but that her left knee became significantly worse over the last month and that she believed it began after a twisting-type injury. (*Id.*) Dr. Sohn reviewed Plaintiff's x-rays and an MRI of her left knee and concluded that she had left knee medial and lateral meniscal tears as well as chondromalacia patella. (*Id.*) Dr. Sohn recommended that Plaintiff undergo left knee surgery, which he performed in March 2012. (Tr. 698-699.)

After her surgery, Plaintiff attended physical therapy. (Tr. 672-688.) In May 2012, physical therapist Lee Grinnonneau noted that Plaintiff attended six treatment sessions post-surgery and that she responded well to treatment. (Tr. 688.) Mr. Grinonneau noted that Plaintiff complained of some mild pain throughout both knees after activity but that "the pain/discomfort is not debilitating to her." (*Id.*) Mr. Grinnonneau further indicated that Plaintiff reached all therapy treatment goals and was being discharged from physical therapy to continue with her home exercises. (*Id.*)

In September 2012, Plaintiff had a follow-up appointment with Dr. Sohn. (Tr. 705.) On examination, Plaintiff had good strength and full range of motion in both knees, but continued to have pain. (*Id.*) Dr. Sohn administered an injection in Plaintiff's left knee and instructed her to follow-up in three months. (*Id.*) Dr. Sohn treated Plaintiff again in October 2012. He noted that Plaintiff did not have any knee effusion, her

5

range of motion was normal in both knees, and she had 5/5 strength in her quadriceps. (Tr. 760-763.)  Dr. Sohn diagnosed Plaintiff with chronic osteoarthritis of the knees, gave her injections in both knees, and recommended that she return in three months. (*Id.*)

In February 2013, Dr. Sohn completed a medical source statement.  (Tr. 787-790.)  He opined that Plaintiff could: stand/walk for a total of two hours in an eight-hour workday for 15 minutes at a time; sit for four hours at a time, or up to eight hours in a workday; and lift and carry up to 10 pounds frequently.  (Tr. 787.)  Dr. Sohn further opined that Plaintiff could never walk on uneven ground; never stoop or bend; only occasionally climb stairs or steps; would need to elevate her legs for two hours in an eight-hour workday; and would need to lie down for one hour in an eight-hour workday. (*Id.*)

### 2. Agency Reports

In November 2011, state agency reviewing physician Maria Congbalay, M.D., opined that Plaintiff was capable of performing light work that was limited to frequent climbing of ramps or stairs; occasional climbing of ladders, ropes, or scaffolds; frequent balancing or kneeling; occasional crouching or crawling; and no concentrated exposure to several environmental conditions and pulmonary irritants.  (Tr. 92-111.)

## C. Hearing Testimony

### 1. Plaintiff's Hearing Testimony

Plaintiff testified that she was unable to work due to breathing problems and pain.  (Tr. 49.)  She stated that when she had difficulty breathing, she had to stop and

use her inhaler or sit down and rest. (*Id.*) Plaintiff further testified that she had knee pain and had to receive cortisone shots. (Tr. 51.) Her knee pain made it difficult for her to stand for more than 10 minutes at a time. (Tr. 52.) She stated that the pain and swelling in her knees improved when she elevated her legs, and that she typically elevated her legs to waist level for an hour per day. (Tr. 59-60)

Plaintiff lived with her husband and her 28-year-old son. (Tr. 39-40.) She testified that on a typical day, she prepared meals, performed household chores such as laundry and sweeping, watched television, or read. (Tr. 54-55.) Plaintiff stated that she went to church once or twice a week, she could drive, and she could go grocery shopping but her husband carried most of the groceries. (Tr. 41, 56.) Plaintiff sometimes watched her husband bowl on Tuesday nights and went to movies with her son. (Tr. 58.)

### 2. Vocational Expert's Hearing Testimony

Mark Pinti, a vocational expert, testified at Plaintiff's hearing. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience who could perform all functions of light work except only frequent climbing of ramps/stairs, balancing, and kneeling; occasional climbing of ladders, ropes, and scaffolds; and occasional crouching and kneeling. (Tr. 63-64.) The individual must avoid extreme temperatures, wetness, humidity, and respiratory irritants such as fumes, odors, dusts, gases, and poor ventilation. (Tr. 64.) The VE testified that the hypothetical individual would be capable of performing Plaintiff's past relevant work as a price changer. (*Id.*) The VE further testified that the hypothetical individual could

7

perform such jobs as a laundry sorter, a mail clerk, and a ticket seller. (*Id.*)

The VE testified that the hypothetical individual described previously would not be capable of performing the jobs he cited if the individual needed to elevate her legs for two hours out of the workday. (Tr. 68.) The VE further stated that none of the jobs identified would allow the worker the ability to lie down. (Tr. 69.)

### III.   STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a

8

severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since October 20, 2009, the alleged onset date.

3. The claimant has the following severe impairments: restrictive pulmonary disease, status post lobectomy; asthma; osteoarthritis of the knees, status post arthroscopy of the left knee; and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except frequent climbing of ramps/stairs, balancing, and kneeling; occasional climbing of ladders, ropes, and scaffolds; occasional crouching and crawling; and avoid extreme temperatures, wetness, humidity, and respiratory irritants such as fumes, odors, dusts, gases, and poor ventilation.

6. The claimant is capable of performing past relevant work as a Price Marker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from October 20, 2009, through the date of this decision.

(Tr. 17-26.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. The ALJ Erred in Evaluating the Opinion of Plaintiff's Treating Physician, Dr. Sohn.

In February 2013, Plaintiff's treating orthopedic surgeon, Dr. Sohn, rendered an opinion regarding Plaintiff's physical residual functional capacity (RFC). (Tr. 787-790.) In his hearing decision, the ALJ summarized Dr. Sohn's opinion and assigned it "little weight," explaining:

> Dr. Sohn has only treated the claimant for one year. His initial consultation with her occurred right after she sustained a twisting injury. It turned out that she had a meniscal tear, which Dr. Sohn performed arthroscopic surgery to repair on March 14, 2012. After surgery, she attended physical therapy with good results. Dr. Sohn continues to treat the claimant with bilateral knee injections approximately every three months. Comparing the limitations with her treatment records, it appears that Dr. Sohn may have overestimated the limitations based on her initial condition after the injury, not her current functioning. For example, at an appointment on October 23, 2012, the claimant did not have any knee effusion and her range of motion was normal in both knees. She also had 5/5 strength in her quadriceps. Additionally, the conclusion that the claimant could never stoop or bend is inconsistent with her reported daily activities of independently using the restroom and performing household chores such as laundry. These activities require stooping and bending. Lastly, the conclusion that she has severe pain is inconsistent with the fact that she only takes acetaminophen and ibuprofen.

(Tr. 23.) Plaintiff argues that the ALJ erred in his evaluation of Dr. Sohn's opinion. For the following reasons, Plaintiff's argument lacks merit.

11

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted). If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *See Wilson,* 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)). This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.,* 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson,* 378 F.3d at 544 (internal quotation marks omitted). Where an ALJ fails to explain his reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand. *Id.*

Here, the ALJ gave "good reasons" for assigning less than controlling weight to Dr. Sohn's opinion, and substantial evidence–as discussed by the ALJ in his hearing decision–supports that conclusion. The ALJ did not merely dismiss Dr. Sohn's opinion without explanation. Rather, the ALJ supported his conclusion that Dr. Sohn's opinion was entitled to "little weight" with specific examples from Plaintiff's record. (Tr. 23.) For instance, the ALJ explained that, considering the limitations supported by Plaintiff's treatment records, it appeared that Dr. Sohn may have overestimated Plaintiff's

12

impairments based on her condition immediately following her twisting injury, not her current functioning. (Tr. 23.) The ALJ noted that after Dr. Sohn performed left knee surgery on Plaintiff, she recovered well and attended physical therapy with good results. (Tr. 22-23, 672-688, 698-699.) The ALJ also considered Plaintiff's post-surgery appointments with Dr Sohn, which showed that although Plaintiff had some knee pain and received pain injections, she had good strength and range of motion in her knees, and had no knee effusion. (Tr. 22-23, 705, 760-763.) Furthermore, the ALJ acknowledged that the extreme limitations assigned by Dr. Sohn conflicted with Plaintiff's statements that she treated her condition with only acetaminophen and ibuprofen. (Tr. 23, 50.) The ALJ concluded that Plaintiff's conservative treatment measures reasonably suggested that her pain was not as debilitating as Dr. Sohn opined. (Tr. 23.) The ALJ further concluded that Dr. Sohn's opinion that Plaintiff could never stoop or bend contradicted Plaintiff's own statements that she was able to perform household chores and use the restroom on her own, activities which required bending and stooping. (Tr. 23, 54-55, 57.) Thus, the ALJ did not violate the treating physician rule in assessing Dr. Sohn's opinion, as the ALJ provided "good reasons" for assigning the opinion less than controlling weight.

Plaintiff also maintains that the ALJ erred in giving greater weight to the opinion of state agency medical consultant Dr. Congbalay, who opined in November 2011 that Plaintiff is capable of performing a limited range of light work. (Tr. 24.) Plaintiff argues that Dr. Sohn's opinion should have been given more deference, because Dr. Sohn was a surgeon who treated Plaintiff, while Dr. Congbalay was a pathologist who did not treat Plaintiff. As the Commissioner explains in her Brief on the Merits, however, the

Social Security Regulations provide that "in appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." S.S.R. 96-6p. Indeed, "[t]he opinion of a medical expert who has not examined the claimant [] is not automatically entitled to less deference than that of a treating physician. . . . [T]he regulations permit an ALJ, under appropriate circumstances, to give great, even dispositive, weight to a medical expert's opinion." Matelski v. Comm'r of Soc. Sec., 149 F.3d 1183, *5 (6th Cir. 1998).

Here, as discussed above, the ALJ adequately explained why he gave less than controlling weight to Dr. Sohn's opinion when deciding Plaintiff's RFC. The ALJ found that Dr. Congbalay's opinion was more consistent with Plaintiff's treatment records and that the postural limitations assessed by Dr. Congbalay adequately accounted for Plaintiff's complaints of ongoing pain with bilateral osteoarthritis of the knees. (Tr. 24.) Contrary to Plaintiff's assertions, the ALJ did not err in assigning more weight to a state agency reviewing physician's opinion over a treating physician's opinion solely because the reviewing physician never treated, operated on, or examined Plaintiff. Although Dr. Congbalay did not treat Plaintiff, the ALJ was not prohibited from assigning great weight to her opinion, finding that it was more consistent with the record evidence than Dr. Sohn's opinion. For the foregoing reasons, Plaintiff's first assignment of error does not present a basis for remand of her case.

### 2. The ALJ Erred in Failing to Evaluate the Opinion of Plaintiff's Treating Nurse Practitioner, Sally Royston.

Plaintiff argues that the ALJ erred in failing to evaluate the November 2010

14

opinion of Sally Royston, Plaintiff's treating nurse practitioner. The ALJ noted in his hearing decision that Plaintiff treated with Ms. Royston, but he did not mention the findings from Ms. Royston's November 2010 opinion or indicate the weight, if any, he assigned to the opinion. Plaintiff maintains that the ALJ's "failure to even mention the opinion of Nurse Practioner Royston was error." (Plaintiff's Brief ("Pl.'s Br.") 19.)

Social Security Ruling 06-3p explains that opinions and other evidence from medical sources who are not "acceptable medical sources," such as nurse practitioners, are relevant to the ALJ's determination of a claimant's RFC:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03P, *6 (S.S.A Aug. 9, 2006). Furthermore, Social Security Ruling 06-3p provides that when evaluating opinion evidence from "other sources" who have seen the individual in their professional capacity, certain factors should be considered,[1] such as:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;

---

[1] Not every factor for weighing evidence will apply in every case. SSR 06-03P, *5 (S.S.A. Aug. 9, 2006).

15

>   - The degree to which the source presents relevant evidence to support an opinion;
>   - How well the source explains the opinion;
>   - Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
>   - Any other factors that tend to support or refute the opinion.

*Id.* at *4-5.

Here, Plaintiff maintains that Social Security Ruling 06-3p *required* the ALJ to evaluate Ms. Royston's opinion. As the Commissioner correctly notes, however, the language of the ruling is permissive; it states that the case record "should," not "shall," reflect the consideration of opinions from "other sources." Furthermore, although the ALJ did not specifically acknowledge Ms. Royston's November 2010 opinion, a review of the ALJ's decision shows that he analyzed Plaintiff's treatment history with Ms. Royston; noted that Ms. Royston recommended physical therapy; evaluated the physical therapy records; and reviewed Plaintiff's post-physical therapy examinations with Ms. Royston. (Tr. 21-23, 494-496, 500-513, 547-549.) Thus, despite the ALJ's failure to explicitly acknowledge Ms. Royston's November 2010 opinion, this Court is satisfied that the ALJ at least considered the relevant evidence from Ms. Royston in assessing Plaintiff's RFC, and that substantial evidence in the record supports the ALJ's conclusion that Plaintiff's condition was not as severe as Ms. Royston opined. Because Ms. Royston, a nurse practitioner, is not an "acceptable medical source," the ALJ had no burden to analyze Ms. Royston's opinion or provide "good reasons" for rejecting it. Accordingly, the ALJ's failure to evaluate Ms. Royston's opinion does not require remand of Plaintiff's case.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

                                                s/ *Nancy A. Vecchiarelli*
                                                U.S. Magistrate Judge

Date: March 31, 2015